(C. D. 1455)

N. M. Albert Co.⎫
Max Steinmetz ⎬ *v.* United States

United States Customs Court, Third Division

(Decided July 25, 1952)

Sharretts, Hillis & Paley (*Amos B. Sharretts* of counsel) for the plaintiffs.
Charles J. Wagner, Acting Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before Cline, Ekwall, and Johnson, Judges; Cline, J., not participating

Johnson, Judge: The merchandise in this case was imported from Brazil and entered as rough agates, uncut, under duty-free paragraph 1668 of the Tariff Act of 1930. Duty was assessed thereon by the collector at the rate of 20 per centum ad valorem as manufactures of mineral substances, decorated, under paragraph 214 of the Tariff Act

of 1930, as amended by T. D. 51909. The plaintiffs claim that it is free of duty under paragraph 1603. It is further claimed by amendment of the protest that, if dutiable, the merchandise is properly dutiable at 5 per centum ad valorem under paragraph 1528, as amended by T. D. 51802, as semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry; or that it is dutiable at 15 per centum ad valorem under paragraph 214, as amended by T. D. 51802, as earthy or mineral substances, not decorated in any manner.

At the trial, Max Steinmetz testified that he is in the "lapidary" business, which consists of cutting precious and semiprecious stones, except diamonds. He described the merchandise in question, a sample of which was admitted in evidence as exhibit 1, as having been sliced by means of a diamond saw out of the rough stone which weighs from 100 to 300 pounds and has uneven surfaces. When ordering the merchandise, the witness testified that he gave the directions for slicing the stone; that if sliced too thick, the stones would not dye properly. The stones are then test-dyed to determine whether they will take dye for the reason that all stones do not take dye in the same degree; the middle slabs, for instance, would take different colors from the outer slabs. Before dyeing, the stones are a milky gray, sometimes a milky red.

The witness explained that the agates in question are used only in the production of jewelry known as black onyx, and it is necessary to determine before importation whether or not the stones are susceptible of taking a dye. That fact is determined by means of the test-dyeing process. The stones are left in the dye 2 or 3 weeks. This is known as a test dye, as such time is all that is necessary to determine whether or not the stones are porous enough to absorb the dye sufficiently to become entirely black. If they were left in the dye for 6 weeks, they would dye through and through. The witness admitted that the test-dyeing process was at least a partial dyeing of the stones.

The witness further testified that some of the material will not take a proper dye, but remains streaked and useless for the purpose of manufacturing into jewelry. After importation, according to the witness, the stones are sliced into small pieces, cut into stones suitable to put into rings, and then redyed and polished. Therefore, so that he may be sure he is obtaining material suitable for his use, he requires it to be cut in a certain specified manner and test-dyed.

A sample of one of the stones which had been cut but not set and suitable for use in jewelry was admitted in evidence as illustrative exhibit 2.

The Government moved in evidence as exhibit A laboratory report C-12171 stating "The sample, in thinly cut slabs, is natural agate, artificially colored."

The importer contends that the agate in question is unmanufactured for the reason that no steps in the production of the finished article have been eliminated by the testing process, in that the agate was cut in thin slabs for the purpose of test-dyeing, and the test-dyeing was necessary in order to determine whether the agate was capable of being dyed a black color. Therefore, the processes undergone before importation were not such as would advance the article toward its final condition as a finished product. Counsel for the plaintiffs in support of the contention that the articles in question are unmanufactured, cites the case of *United States* v. *Hahn*, 91 Fed. 755, and *Hahn* v. *United States*, 4 Treas. Dec. 990, T. D. 23432, G. A. 5053, and distinguishes the case of *Stilwell* v. *United States*, 51 Treas. Dec. 94, T. D. 41969. Many cases treating the subject of whether or not an article is manufactured were also cited.

The importer further contends that, if the articles imported are to be treated as manufactured, they are not such as may come within the meaning of "decorated" for the reason that nothing has been done to the agates as imported to enhance their final appearance because after importation they still must be cut, dyed, and polished.

The Government contends that as imported the agates in question are cut in slabs of a specified width and thickness and partially dyed and, therefore, have been brought to a stage in the development thereof toward the finished semiprecious stone, the use for which it was dedicated. Government counsel cites the *Stilwell* case, *supra*, where agates, unmanufactured, are defined as:

"Agates, unmanufactured" * * * evidently means agates as they come from the earth. * * *

It is further contended by the Government that not only are the agates manufactured but they are also decorated, as the partial dyeing of the agates enhanced the beauty of the stone toward its ultimate use.

It is the opinion of this court that the merchandise, as imported, does not come within the description of agates, unmanufactured, provided for under duty-free paragraph 1603. In the *Stilwell* case, *supra*, the court defined the tariff language "Agates, unmanufactured" as pertaining to "agates as they come from the earth." The court noted that the agate specimens there in question had undergone a process of manufacture by being polished on both sides, and were not in the same condition as they were taken from the earth. The collector had assessed the agate articles there in question as articles of agate, not suitable for use in the manufacture of jewelry, and the court sustained that classification. The agates before the court in the pending case are not of the same character as in the *Stilwell* case, *supra*, but they have been cut into slabs of a specified dimension and in addition thereto they have been dyed. True, the dyeing process to which they were subjected was not brought to the completion

necessary to enable them to be used as onyx, but it was partially complete, as admitted by the importer. Such processes as were applied to the agates in question surely cannot be regarded as separating the articles from their native state, nor conditioning them for advantageous or expeditious transportation. The processes so applied partially prepared the agates for their ultimate use in jewelry as articles of onyx jewelry.

The paragraph of the law under which the merchandise was assessed provides for earthy or mineral substances either wholly or partly manufactured; also articles, wares, and materials, either in a crude state or advanced in condition, which are composed wholly or in chief value of earthy or mineral substances, whether of the nature that decoration thereof is possible or not, unless otherwise specially provided for. If decorated, the duty is 20 per centum ad valorem; if not decorated, the duty is only 15 per centum.

As we have held that the articles are not agates, unmanufactured, and as the evidence does not establish that the articles are cut but not set and suitable in their imported condition for use in the manufacture of jewelry, as provided for under paragraph 1528, we find that the only provision under which the articles fall is paragraph 214. However, even though we have found that the articles are not manufactured, we are of the opinion that they have not reached the state of being a manufactured article, but they do come within the description of an earthy or mineral substance partly manufactured.

The question then arises whether or not the agates at issue may be regarded as within the language "decorated in any manner." To be decorated, an article must be enhanced in appearance. The dyeing of the articles in question does not constitute a decoration. True, it amounts to a change in appearance of the article from its natural state, but the dyeing has not embellished the article ornamentally in any manner. As imported, the stones are in a semimanufactured state and are required to be subjected to several other processes including additional dyeing before becoming a completed article of commerce.

It is not the intent of the Congress that an article, such as we have here before us, is to be regarded as within the descriptive terms of "decorated in any manner." The sample of the imported merchandise in evidence is a potent witness, fully establishing the agate not to be decorated.

For the reasons stated, judgment will be entered in favor of the importer directing the collector to reliquidate the entry assessing duty at the rate of 15 per centum ad valorem under paragraph 214, as amended by T. D. 51802, as claimed, and to refund all duties taken in excess in accordance with law.